UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * *

THE ESTATE OF YARON UNGAR, et al
Plaintiff

C.A. No. 00-105 L

VS.

PROVIDENCE, RI
SEPTEMBER 13, 2006

THE PALESTINIAN AUTHORITY, et al
Defendant

* * * * * * * * * *

BEFORE SENIOR DISTRICT JUDGE RONALD R. LAGUEUX

APPEARANCES:

FOR THE PLAINTIFFS:
DAVID J. STRACHMAN, ESQ.
321 South Main St.
Suite 400
Providence, RI 02903
351-7700

FOR THE DEFENDANT:
DEMING E. SHERMAN, ESQ.
Edwards & Angell
2800 Financial Plaza
Providence, RI 02903
274-9200

JAMES R. OSWALD, ESQ.
Adler Pollock & Sheehan PC
8th Floor
Providence, RI 02903
274-7200

Court Reporter:
JOSEPH A. FONTES
145A High Point Blvd.
Delray Beach, FL 33445
561-452-7507

Proceeding reported and produced by computer-aided stenography

September 13, 2006 - MORNING SESSION
THE COURT: Good morning, everyone. The matter before the Court is Civil Action 2000-105 L, The Estate of Yaron Ungar, and others versus the Palestinian Authority, and others. The matter is here on plaintiff's motion for default on the creditor's bill which was filed by the plaintiffs against the PA and the PLO. Will the attorneys identify themselves for the record, please.
MR. STRACHMAN: David Strachman for the plaintiffs.
MR. SHERMAN: Deming Sherman appearing on behalf of the Palestinian Authority and the PLO. Your Honor, may I breifly address the Court before the argument begins?
THE COURT: All right.
MR. SHERMAN: Your Honor, I'm here this morning because I remain counsel of record, and as an officer of the Court. However, I have not received any instructions from the clients that I previously represented in this matter and, therefore, I'm not authorized to take a position one way or the other, and do not intend to participate beyond being present in the Court.
THE COURT: All right. Well, they haven't responded to this creditor's bill. The PA and the PLO have not responded.
MR. SHERMAN: I understand.
THE COURT: So that's why there's a motion for

3

entry of default, and entry of default judgment.

MR. SHERMAN: I recognize that, your Honor.

THE COURT: All right. Then you're not going to argue on it?

MR. SHERMAN: No. I'm not authorized to argue on behalf of those entities. Thank you.

THE COURT: All right.

MR. OSWALD: Your Honor, may I be heard?

THE COURT: Yes.

MR. OSWALD: Your Honor, my name is James Oswald from Adler Pollock and Sheehan here in town. I represent non-parties who have an interest in this motion, and in this creditor's bill. Those non-parties are Canaan Equity Offshore, Canaan Equity II Offshore, and Canaan Equity III Offshore. These are Venture funds, your Honor, that are down in Connecticut based overseas.

Your Honor may recall that I was before the Court approximately a year ago, and during the course of last summer regarding attempts by the plaintiffs to seize or to freeze certain assets of the Palestinian Investment Fund, the Palestinian Pension Fund, and an entity called, Becont in these Canaan Venture Funds. We had a back and forth with respect to the injunction that your Honor issued. And at one point we had filed a motion for clarification of that injunction to see whether the injunction, in fact, covered

4

those entities. Although I'm here representing non-parties

because they have an interest, Canaan collectively, we filed a letter of response to the Court on July 18th of this year responding to the plaintiff's creditor's bill and setting forth the reasons why we have an interest and why we ought to be heard. The short version is is that the creditor's bill seeks to have turned over to the plaintiffs assets, in particular P.I.F., the Palestinian Investment Fund. Those are assets that are in -- some of those assets are in these Canaan Venture Funds. In the interim, what had happened last summer was that plaintiffs had filed an action in Federal Court in Connecticut for the very issue that I think they're asking to be heard on today, which is can those -- are those assets reachable? Are the assets of P.I.F. in fact the assets of the PA or the PLO? Respectfully, as we set forth in our July 18th letter, that is the very issue that is pending before the federal - before Judge Dorsey down in Connecticut. And again the other bases are set forth in our letter, in particular, that the threshold requirement under 9-28-1, that the Writ of Execution come back unsatisfied has not been met. We're concerned that the very issue that's being asked to be decided yet again by this Court is, in fact, the issue that is pending down in Connecticut which your Honor had requested the plaintiffs go do. They did. It's going to be decided down there. Thank you.

5

MR. STRACHMAN: Your Honor, can I respond?

THE COURT: Yes. Well, the Canaan entities are not parties to this case, and I'll hear whatever arguments you

want to make as a friend of the Court. But what I'm dealing with here is a defaulted case, and the question is, what form will the judgment take? And I have limited jurisdiction because none of those entities are before this Court. The only jurisdiction I have is over the PA and the PLO, which I determined a long time ago. So there's certainly a question about any judgment that I enter in this case as to its territorial effect. But I'll hear all the arguments that anybody wants to make on this subject, and I'll make a determination.

MR. STRACHMAN: Thank you, your Honor. I find that it's -- at the outset, it's somewhat disingenuous that the party who was here for 4 years of litigation through 8 written decisions and two appeals won't come forward to recognize the jurisdiction of this Court, won't show up in court other than to say that they're not arguing, they're not taking a position. A party that is unrelated to this litigation, that is really nothing more than a stakeholder, who came to this Court last year, invoked the Court's jurisdiction, then after the Court made a ruling, I believe on the receivership motion, and there was a discussion about moving to Connecticut with respect to a particular asset, and



we did that, then came to this Court and said, "Oh, we're going to change tacts and we're going to now litigate that issue in Connecticut." There is an issue in Connecticut that's being litigated. It is not a creditor's bill. My

brother, Mr. Oswald, would have you believe that this proceeding is entirely dependent upon him, his client, and this one small asset. The asset, by the way, that's in Connecticut, is valued between 3 and 5 million dollars. Barely the interest that's accrued on this judgment in the last two years. The status of the matter in Connecticut is that Canaan has filed motions to dismiss our collection proceedings there on various jurisdictional bases. If their motion is granted, there will be no ruling on the substantive matter whether we can -- the status of these investments.

But what's before the Court today is a very simple proceeding. And to respond to your Honor's comments at the outset, this Court has jurisdiction over these two defendants, the PA and the PLO. Your Honor knows that better than anyone, and your Honor wrote several decisions on that very issue. They are here, as this Court has in personam jurisdiction over them. This Court can manage their affairs just as superior courts have done, and I notice that's a more traditional forum for this type of procedure, a creditor's bill. A case that I unfortunately neglected to include in our brief is the Desper versus Talbot case, and I can pass a



copy up to the Court afterwards, 727 A2d 1233, and this Court did exactly what we're asking. The Supreme Court upheld the procedure exactly as we're asking this Court to do here, and that is to simply say whatever interest the PA and the PLO have in these two entities. They, by the way, as we showed the Court and demonstrated in our exhibits, are the sole

shareholders in these entities. These entities were designed specifically, and their own web sites say that these entities were designed to hold PA assets. It's the PA Christmas fund account, if you will. They took all their assets, they put them in this one entity so they were gathered and corralled, so everyone can look at them. They advertised this on their web site. Standard & Poor's has documented this. The World Bank has documented this. This is not a piercing the corporate veil issue. This is simply their piggy bank or their collection of toys, if you will. Their funds.

So what we're asking this Court simply to do is to say their interest be equitably assigned to my clients. The clients will then probably have to do a lot of things outside of this jurisdiction with respect to those assets. I don't foresee that we would be coming back to the Court, to this Court, in the future, with respect to these assets. And the Court gave us some direction last year with respect to the receivership motion as to whether this Court was going to supervise collection activity of this judgment, you know, and

8

I understood what the Court said. But now that the Court has jurisdiction over these defendants, and it's crystal clear, and they've brazenly refused to respond, they failed to respond initially, then the Court gave them another response date, they blew that, they don't come to court here. I think we have no choice but to enter default, and then enter default judgment assigning these interests to my clients. My

clients will then be in a position that of controlling and of managing, if you will, this interest, these two interests. Now whatever those funds have invested in, and one of those funds invested in these, possibly these Canaan entities, we understand that we're going to take, subject to whatever those contractual rights are. We've had a series of discussions with Canaan's attorneys way back about the nature of those contracts, those interests. They're very difficult to reduce to a value. They're partnership interests which have all kinds of different subscriptions and target dates, et cetera.

But we urge the Court to grant this motion, to grant the relief, and I have a prepared motion -- excuse me, a prepared order, that I'd like to provide to the Court for review, because we find ourselves two years later virtually in the same place that we were in July of 2004 when this Court entered final judgment after four-and-a-half years of litigation. And as we demonstrated in our initial pleading

9

in this present matter, the PA and the PLO have taken the position in other courts that they no longer recognize the jurisdiction of the Courts, although they're litigating other terrorist cases with them, and Ramsey Clark and Larry Schilling are there and are participating in certain cases, they've brazenly told Courts they're are not going to pay the discovery fines, et cetera. We find ourselves in a very difficult position. There's no reason that these orphans and their families have to suffer further through more years of

tortious litigation simply because they won't comply with the Court order.

I would urge the Court not to be sidetracked, and I heard what your Honor said initially, but I would ask the Court to reconsider even listening to the position of Canaan. Canaan is a stakeholder. They have no -- they have not moved to intervene. By stipulation, their involvement in this case terminated, I believe, about a year ago. They have no reason and no basis to come into this Court and to make arguments. They're really not a friend of the Court. They're really a shill for the PA and the PLO. Their position should be as a third-party garnishee. Whatever happens, happens. I have no interest one way or another. Instead what they're doing is they're sort of stubstituting here for the PA and the PLO, and they're sort of trying to manipulate and hijack these proceedings into a, you know, offense against the Ungers, and

10

it's just not right. They're not here. They haven't entered an appearance. They haven't sought to intervene, and by agreement all the proceedings that they were involved in, and the motion that they filed a year ago, over a year ago, was dismissed. So I'd ask the Court to not to hear from them, and to not accept letters from them and from friends and other people who have written letters to the Court in this case who are not involved in this case, who have tried to stymie certain rulings that the Court has made, and the plaintiff's proceedings, and I just think it's inappropriate.

There's no basis for it.

THE COURT: Well, I don't decide cases on letters. And letters are not official. Although I'm putting them in the file so that everybody will know what these letters are that are being sent to me. I decide cases based on pleadings and legal arguments. And although I've read the material, it doesn't persuade me.

I'm satisfied that whatever judgment I enter here today has no bearing on the Connecticut case. If I enter a judgment assigning to the plaintiffs all the rights that the PA has in these two entities, that's the limit of the order of the Court, the judgment of the Court, then that has to be executed somewhere where these two entities are doing business. They're not doing business in Rhode Island. As I said from the very beginning, there's no way I'm going to



supervise the collection of this judgment because there are no assets in this jurisdiction of the PA and the PLO. Although they're subject to the jurisdiction of this Court, I can enter an order such as is proposed here. Really it's a judgment. I'm entering a judgment on the creditor's bill.

MR. STRACHMAN: Could I -- I have a proposed order, your Honor, I'd like to offer up to the Court.

THE COURT: All right. It's absolutely clear that the PA and PLO have defaulted, and so I am -- it's unnecessary for me to tell the clerk to enter a default. I declare a default. And now I will enter judgment for the plaintiffs against the PA and the PLO.

MR. OSWALD: Your Honor, may I be heard very briefly in response to Mr. Strachman?

THE COURT: Yes.

MR. OSWALD: Thank you. Your Honor, I'm not here for the PA. I'm not here for the PLO. I'm not a shill, I'm not a piggy bank, I'm not any of the things that I've been accused of being. We have one single interest and that is the fact that this entity, PIF, has assets in the Canaan Venture Funds. The order that is being asked for the Court to enter is not simply an order against the PA and the PLO. It is an order specifically reaching, applying, and subjecting to the payment all of the assets held by the PCSC, which is an entity I don't know about and don't care about,



and PIF.

THE COURT: That's right.

MR. OSWALD: Therefore, it is going -- the piggy bank analogy that was made, there's a presumption that is being made there that I don't know whether it was correct or not, but is going to be decided by the federal court in Connecticut. Mr. Strachman says here to the Court that the PIF is the piggy bank for the PLO and the PA. If it is, the federal court in Connecticut will say so. If it is not, the federal court will say so. But the order --

THE COURT: That's up to the federal court in Connecticut. I'm doing my business here. The federal court in Connecticut can do what it thinks is appropriate.

MR. OSWALD: We agree completely, your Honor. The only concern that we have here with the entry of the order is that it is effectively going to decide the issue. That is, to decide the issue that PIF is in fact a shill or a piggy bank for the PA or the PLO. We don't want your Honor's order to decide that. There's been no evidentiary hearing. There's been no evidence. The things that Mr. Strachman is saying certainly are not evidence. That is the very issue that your Honor directed plaintiffs to have decided down in Connecticut. That's our sole and only concern here before the Court.

THE COURT: You can make those arguments before the



federal judge in Connecticut. What I have authority to do here is to enter orders against the PA and the PLO. They've defaulted on this creditor's bill, and I have the power to enter orders against them. And one of the orders or judgments that I'm going to enter is that any assets that the PA owns, or any interest that it owns, in those two entities is assigned to these plaintiffs. And then you'll have to deal with them down in Connecticut.

MR. OSWALD: So to be clear, your Honor's order does not go so far as to saying that these entity's assets are, in fact, the assets of the PLO or the PA? Your Honor is not deciding the issue that is before the Connecticut court, is that my understanding?

THE COURT: I am deciding that because the PA and PLO have defaulted. And based on these allegations, I'm

deciding that they have, the PA has interests in these two entities, and I'm assigning whatever interests they have to the plaintiffs.

MR. OSWALD: I see. If they have an interest, it is being assigned. But the determination of whatever those interests are is ultimately being left to the Connecticut court.

THE COURT: Well, the Connecticut court will have to decide some issues here. I'm deciding that whatever the PA owns in these two entities is assigned to the plaintiffs.



Then the plaintiffs can proceed as they see fit. And you do what you have to do down there. You're a stakeholder. Your clients are stakeholders. It shouldn't matter to them who owns these assets.

MR. OSWALD: We just want to know what to do, your Honor.

THE COURT: Right. And the Connecticut court will decide who owns these assets.

MR. OSWALD: Very good.

THE COURT: And then you'll pay up.

MR. OSWALD: Whatever the Connecticut court decides, your Honor, we are in lock step with it. We're just waiting for that decision. Thank you.

THE COURT: I can't forecast what the Connecticut court is going to do. All I can do is deal with what I have jurisdiction over. And I have jurisdiction over the PA and

the PLO.

MR. OSWALD: Thank you, your Honor.

THE COURT: And they've defaulted on this creditor's bill and so I'm going to enter judgment against them. And that judgment is going to take the form of an assignment of any rights they have in these two entities to the plaintiffs. That's what the judgment is going to be in this case. You agree, Mr. Strachman?

MR. STRACHMAN: Yes. I just --. Unfortunately,



your Honor, we've been victim of people taking transcripts and taking statements, and not Mr. Oswald, but others taking statements that were made in previous hearings, this is in litigation we have in several courts in New York, out of context. We provided evidence to the Court that was unrebutted. That evidence suggests and proves that not only does the PA own these two entities, we've shown the Court the stock certificates. But not only that, we've shown the Court affidavits from counsel in Israel who said the PA have pledged these very assets to pay terrorism judgments. And I just want it to be clear because toward the end of your Honor's statement there may be something that it may be misconstrued. Your Honor is ruling, as I understand, that any interest that the PA and the PLO -- it's really the PA, but that they have in these two entities, the PIF and the PCSC are now assigned to my client.

THE COURT: Right.

MR. STRACHMAN: Now, that order is effective as to

any interest that the PA and the PLO have. If their interests are in Switzerland, this Court, and I believe your Honor said has no direct bearing on that underlying asset in Switzerland, but the entity called the PA -- PIF, and the entity called the PCSC, now are assigned in toto to my client. No different than a stock certificate in General Motors which may be located in Detroit but the stock



certificate is here. Or a piece of art work that may be out of state but the owner of the art work is here, because I don't want that to be misconstrued. I think my brother's argument is we may not, as owners of the PIF, and as owner and assignees now of the PIF we may not be able to reach the interest in Connecticut. That's one argument. That's a separate argument than to say we're not the PA -- the PIF. We are the PIF now. We are the PCSC, in Connecticut and anywhere else. And I believe that's -- I just wanted to clarify that. Is that correct, your Honor?

THE COURT: That's going to be my judgment.

MR. STRACHMAN: Thank you.

THE COURT: That's the judgment I'm entering.

MR. STRACHMAN: Thank you, you Honor.

THE COURT: I haven't had an opportunity to digest this but, as I've said, this is the judgment that I'm going to enter. And I want you to spell it out. I don't need an order. What I need is a judgment.

MR. STRACHMAN: The order that we provided, your

Honor, we thought we were complying with Rule 55 that first the Court would direct that default be entered. And we had provided previously to the Court an order on the application for default, and then we are asking that the Court enter a ruling on this application, on the creditor's bill today, and that a separate order, or separate judgment, would enter.

17

we'd be looking for a separate judgment.

THE COURT: All right. Right. Well, it won't be the clerk that enters the separate judgment. It will be me that enters the separate judgment.

MR. STRACHMAN: Thank you.

MR. OSWALD: And, again just for clarification, your Honor. Ultimately the determination of whether the PIF assets that are in the Canaan Venture Funds whether those are, in fact, funds of the PA or the PLO, is ultimately the issue that is being left to decide to the federal court in Connecticut.

MR. STRACHMAN: No. No. That --

THE COURT: I don't know. No. I'm deciding this based on the proof of claim that's been submitted to me. The proof of claim is, that the PA owns these two entities and, therefore, the interests of the PA are assigned to the plaintiffs. And then they can proceed to try to collect in Connecticut.

MR. OSWALD: Whatever interests those happen to be are being assigned to the plaintiffs.

THE COURT: It's ownership. Full ownership rights.

That's what's been proven to me through the documentation in this case. There's a default. The PA and the PLO have defaulted this case, and so I'm deciding this case on the proof of claim that's been submitted to me. Sometimes I have



a full hearing and hear testimony on the proof of claim. I don't need it in this case because it's been fully documented. And it's part of the record of this case.

So I will digest this order and make any changes, and ultimately I will enter a judgment as indicated.

MR. STRACHMAN: Thank you.

THE COURT: I'm satisfied that the plaintiffs have proved their claim. All right.

MR. OSWALD: Thank you.

THE CLERK: All rise.

(R E C E S S)

C E R T I F I C A T I O N

I hereby certify that the foregoing transcript is a true and accurate transcript, according to my stenographic notes.

___________________________

Joseph A. Fontes

___________________________

Date

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

DAVID J. STRACHMAN, ESQ. September 13, 2006

351-7700

IN RE: Transcript in the case of; The Estate of Yaron Ungar, et al v. The Palestinian Authority, et al, Ca No. 00-105 L. Heard bf: Senior Judge, Ronald R. Lagueux on September 13, 2006.

18 pages x. $4.40 = $79.20

MAKE CHECK PAYABLE TO:

Joseph A. Fontes
650 East Greenwich Ave.
Bldg. 5 Apt 402
West Warwick, RI 02893
561-452-7507