# EXHIBIT 2

Palestinian National Authority

# ARTICLES OF ASSOCIATION

# PALESTINE INVESTMENT FUND

**Adopted**
**14 August 2002**

# TABLE OF CONTENTS

Page

ARTICLE 1 DEFINITIONS .......... 2

ARTICLE 2 FORMATION OF THE COMPANY .......... 11

2.1 Name of the Company .......... 11

2.2 Office .......... 11

2.3 Commencement; Existence; Immunities .......... 11

2.4 Initial Capital Contribution .......... 12

2.5 Term of Company .......... 12

ARTICLE 3 PURPOSES AND POWERS .......... 13

3.1 Purposes .......... 13

3.2 Powers .......... 13

3.3 Investment Limitations .......... 16

ARTICLE 4 SHAREHOLDER .......... 17

4.1 Shareholder .......... 17

4.2 No Additional Shareholder .......... 17

4.3 Action by Shareholder .......... 17

4.4 Third Party Beneficiary .......... 17

ARTICLE 5 MANAGEMENT, EXPENSES AND COMPENSATION, EXCULPATION AND INDEMNIFICATION .......... 18

5.1 Management of Company .......... 18

5.2 Officers .......... 18

5.3 Transactions with Affiliated Persons; Conflicts of Interest. .......... 20

5.4 Expenses .......... 23

5.5 Exculpation. .......... 24

5.6 Indemnification. .......... 24

ARTICLE 6 BOARD OF DIRECTORS; COMMITTEES .......... 27

6.1 Appointment and Qualification of Directors .......... 27

6.2 Authority and Obligations of Board of Directors .......... 27

6.3 Action by Board of Directors; Bylaws .......... 30

6.4 Resignation and Removal of Directors .......... 31

6.5 Board of Directors Compensation ..... 31
6.6 Committees ..... 32
6.7 Audit Committee ..... 32
6.8 Conflicts Committee ..... 33
6.9 Investment Committee ..... 34
6.10 Nominating Committee ..... 34
6.11 Actions by Committees ..... 34

ARTICLE 7 CAPITALIZATION AND CAPITAL ACCOUNTS ..... 36
7.1 Issuance of Shares ..... 36
7.2 Share Certificates ..... 36
7.3 Share Register ..... 36

ARTICLE 8 VALUATION OF COMPANY ASSETS ..... 37
8.1 Marketable Securities ..... 37
8.2 Securities Other Than Marketable Securities; Other Assets ..... 37
8.3 Liabilities ..... 37

ARTICLE 9 DISTRIBUTIONS; NO CAPITAL WITHDRAWAL ..... 38
9.1 Discretionary Distributions ..... 38
9.2 Restrictions on Distributions. ..... 38
9.3 No Withdrawal of Capital ..... 39
9.4 Certain Provisions Relating To Distributions. ..... 39

ARTICLE 10 DURATION AND TERMINATION OF THE COMPANY ..... 41
10.1 Liquidation of Company Shares upon Dissolution. ..... 41

ARTICLE 11 RECORDS AND REPORTS ..... 43
11.1 Books and Records ..... 43
11.2 Financial Reports ..... 43
11.3 Accountants ..... 43

ARTICLE 12 SHAREHOLDER ACTION ..... 44
12.1 Meetings ..... 44
12.2 Place of Meetings ..... 44
12.3 Notice of Meetings ..... 44
12.4 Action by Shareholder without a Meeting ..... 44

ARTICLE 13 SEAL ........ 46

13.1 Seal ........ 46

ARTICLE 14 AMENDMENTS ........ 47

14.1 Amendments ........ 47

Exhibit A ........

Exhibit B ........

Exhibit C ........

Exhibit D ........

# ARTICLES OF ASSOCIATION

# OF

# PALESTINE INVESTMENT FUND

By Decrees of the President of the Palestinian National Authority on 1-10-2000 (attached as Exhibit A), a Higher Council for Development was established and charged with promoting investment in Palestine and ensuring good revenue performance and sound revenue administration and a fund for investment in Palestine was directed to be established, to be directly seconded to the Higher Council for Development.

These Articles of Association, which have been approved by the Higher Council for Development, and the President of the Palestinian National Authority, provide for the organization and establishment of the Palestine Investment Fund as such fund was so decreed.

By the 1-10-2000 Decree of President of the Palestinian National Authority the Palestine Investment Fund is established for all purposes under the laws of the Palestine National Authority and, as a separate legal entity, to begin operations as provided in these Articles of Association and to have such authority, powers, terms and conditions as is set forth in these Articles of Association.

ARTICLE 1

DEFINITIONS

The defined terms used in these Articles shall have the meanings specified below:

1.1 *"Accountants"* has the meaning ascribed thereto in Section 11.3.

1.2 *"Act"* means the 1-10-2000 Decree of the Chairman of the Executive Committee of the Palestine Liberation Organization and President of the Palestinian National Authority and adoption of these Articles establishing the Company pursuant to the approval of these Articles by the President and the Higher Council for Development.

1.3 *"Affiliate"* of a specified Person means a Person that, directly or indirectly, controls, is controlled by, or is under common control with, the specified Person. For this purpose, "control" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting Securities, by contract or otherwise, and "controlled" and "common control" shall have meanings correlative thereto. Without limitation of the generality of the foregoing, an Affiliate of a Portfolio Company shall include any principal, partner, officer, director, shareholder or other holder of an equity or similar interest of the Portfolio Company; provided, however, that no Person shall be an Affiliate of a Portfolio Company solely because such Person is a Director or an officer or employee of the Company; and provided, further that the PNA shall not be an Affiliate of any Portfolio Company.

1.4 *"Articles"* means these Articles of Association, as amended from time to time.

1.5 "Audit *Committee"* means the Audit Committee as described in Section 6.7.

1.6 *"Available Assets"* means as of any date, the excess of the cash, cash equivalent items and Temporary Investments held by the Company over the aggregate fair market value of the amount of such items determined by the Directors to be reasonably necessary for the payment of the Company's expenses, liabilities and other obligations, and for the establishment of appropriate reserves for such expenses, liabilities and obligations as may arise, including the maintenance of adequate working capital for the continued conduct of the Company's business.

1.7 *"Basis"* means, with respect to any right or asset (including any Securities) held by the Company, the basis thereof as determined in accordance with GAAP.

1.8 *"Board of Directors"* has the meaning ascribed thereto in Section 6.1.

1.9 *"Business Day"* means any day on which banking institutions in Palestine are not authorized or required by law to close.

1.10 *"Capital"* means the sum of the aggregate par value of all outstanding Shares of the Company.

1.11 *"Capital Contribution"* means the total amount of any cash and the fair market value of any Portfolio Investments contributed to the Company by the Shareholder.

1.12 *"Commencement"* has the meaning ascribed thereto in Section 2.3.

1.13 *"Company"* means Palestine Investment Fund organized pursuant to the Act and existing subject to the terms of these Articles.

1.14 *"Conflicts Committee"* means the Conflicts Committee as described in Section 6.8.

1.15 *"Damages"* means the fines and penalties, and fees and expenses of counsel, experts and investment bankers, and other fees and expenses reasonably incurred in connection with the investigation, defense or disposition of any action, suit or other proceeding, whether civil or criminal, before any court or administrative body.

1.16 *"Designated Official"* of the Shareholder means the President or his successor or such other designee who shall, from time to time, be designated in a written notice by the Shareholder to the Company as authorized to act on behalf of the Shareholder as provided in these Articles.

1.17 *"Directors"* means the members of the Board of Directors.

1.18 *"Entity"* means any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, cooperative, association, Parastatal Organization or other juridical entity.

1.19 *"Exculpated Person"* has the meaning ascribed thereto in Section 5.5.

1.20 *"Extraordinary General Meeting"* means any meeting other than an Ordinary General Meeting.

1.21 *"Fair Market Value"* of a Company asset means the value of such asset as determined pursuant to Article 8 hereof.

1.22 *"Fiscal Year"* means the fiscal year of the Company, which shall end on the 31st day of December in each year.

1.23 *"GAAP"* means generally accepted accounting principles as from time to time set forth in the opinions of the Accounting Principles Board of the American Institute of Certified Public Accountants

and in statements by the Financial Accounting Standards Board or in such opinions and statements of such other entities as shall be approved by a significant segment of the accounting profession, applied on a consistent basis.

1.24 *"General Manager"* means the Person appointed by the President, pursuant to the 1-10-2000 Decree of the Chairman of the Executive Committee of the Palestine Liberation Organization and President of the Palestinian National Authority, as the General Manager to manage the affairs of the Company under the oversight of the Board of Directors and any other Person hereafter appointed as the General Manager of the Company as herein provided. The initial General Manager of the Company shall be the Person designated in Exhibit B hereto.

1.25 *"General Meeting"* means either an Ordinary General Meeting or an Extraordinary General Meeting, as the context may require.

1.26 *"Higher Council for Development"* means the Higher Council for Development established pursuant to the 1-10-2000 Decree of the Chairman of the Executive Committee of the Palestine Liberation Organization and President of the Palestinian National Authority, or its successors having comparable authority and responsibilities as established by Presidential Decree or legislation.

1.27 *"Immediate Family"* means, with respect to any individual, his spouse, parents, brothers, sisters, children (natural or adopted), grandchildren and grandparents.

1.28 *"Indemnified Person"* has the meaning ascribed thereto in Section 5.6(a).

1.29 *"Independent Director"* means an individual (a) who is not an Affiliate of any Portfolio Company or a member of the Immediate Family of any natural person who is an Affiliate of any Portfolio Company, (b) who is not an official of the Shareholder or any of its agencies, instrumentalities or Parastatal

Organizations (other than the Company), (c) who is not, and has not been at any time since the beginning of the Company's last two completed Fiscal Years, an officer, employee, agent or representative of the Company or any Portfolio Company and (d) who is not a Person, and is not a partner or employee of a Person, who has in either of the Company's last two completed Fiscal Years received compensation or other payments from the Company (other than compensation received by such Person solely in his capacity as a Director) exceeding an aggregate of $1,000. As to any particular Entity proposed for investment by the Fund, a Director will be an Independent Director only if such Director is an Independent Director as provided above in this definition and also has no direct or indirect beneficial interest in such Entity (other than an interest that, in the aggregate, has a fair market value of less than $5,000).

1.30 *"Investment Committee"* means the Investment Committee as described in Section 6.9.

1.31 *"Investment Guidelines"* means the Investment Objectives, Policies, Procedures and Restrictions set forth in Exhibit C to these Articles, which are hereby incorporated into, and form a part of, these Articles.

1.32 *"Liquid Investments"* has the meaning ascribed thereto in the Investment Guidelines.

1.33 *"Marketable Securities"* means Securities that are (x) traded on a recognized securities exchange (whether in Palestine or elsewhere) or (y) traded over-the-counter (whether in Palestine or elsewhere) and, in each case, are determined by the Directors to be marketable at a price approximating their fair market value within a reasonable period of time and are not subject to restrictions on transfer as a result of applicable contract provisions or the provisions of any applicable law or regulation.

1.34 *"Nominating Committee"* means the Nominating Committee as described in Section 6.4.

1.35 *"Operating Procedures"* means the manual of operating procedures, guidelines and administrative requirements for the operation and administration of the day-to-day affairs of the Company that is adopted by the Board of Directors as the "Operating Procedures" of the Company.

1.36 *"Ordinary General Meeting"* means the annual general meeting of the Board of Directors.

1.37 *"Palestine"* means the West Bank and Gaza Strip and its successors.

1.38 *"Palestinian National Authority" or "PNA"* means the Palestinian National Authority and any successor thereto that serves as the executive governing body of Palestine.

1.39 *"Parastatal Organization"* means any nation or government, any state or other political subdivision thereof, any administrative, arbitral, regulatory, fiscal, judicial or government-owned body, department, commission, authority, tribunal, agency or corporate or other entity, including any national, regional, state, provincial, municipal or local entity of any such kind exercising executive, legislative, judicial, regulatory, administrative or corporate and commercial functions of or pertaining to government.

1.40 *"Person"* means any individual or Entity, and the heirs, executors, administrators, legal representatives, successors and assigns of such Person where the context so permits.

1.41 *"Portfolio Company"* means an Entity, whether in corporate, partnership or other juridical form, in which a Portfolio Investment is made by the Company directly or through one or more intermediate entities of the Company.

1.42 *"Portfolio Investment"* means any debt or equity (or debt with equity) investment (other than Liquid Investments and Temporary Investments) made by the Company, including, without limitation, debt

or equity (or debt with equity) investment in infrastructure projects in Palestine and investment in real estate located within the geographical boundaries of Palestine.

1.43 *"President"* means the Chairman of the Executive Committee of the Palestine Liberation Organization and President of the Palestinian National Authority.

1.44 *"Related Person"* has the meaning ascribed thereto in Section 5.3.

1.45 *"Resolution of Directors"* means a resolution approved at a meeting of the Board of Directors or of a duly constituted committee of the Board of Directors by the affirmative vote of a majority of the Directors present at the time of the vote, if a quorum is present at such time, where the meeting was called on proper notice or, if on short notice, if those Directors not present waived notice, whether before, during or after the meeting; or a resolution consented to in writing by all Directors or by all members of such committee, as the case may be.

1.46 *"Resolution of the Shareholder"* means a resolution approved by the affirmative vote of the Shareholder.

1.47 *"Seal"* means the common Seal of the Company.

1.48 *"Securities"* means capital stock, including common and preferred stock, securities convertible into capital stock, subscriptions, depository receipts representing the right to receive any such securities, non-convertible debt instruments and evidences of indebtedness (including loans and participations in loans), bonds, notes, debentures, partnership interests, trust receipts, claims, and futures and options contracts, forward contracts and similar instruments, and other securities and obligations of any kind or type of any corporation or other Entity, including, without limitation, securities issued or guaranteed by

governmental Entities and other non-profit Entities, as well as any certificates of participation or beneficial interest in, or rights, options or warrants to purchase, any of the foregoing or any stock market indices.

1.49 *"Shareholder"* means the Palestinian National Authority, acting through its Higher Council for Development or its successor as the holder of the outstanding Shares.

1.50 *"Shares"* means the Common Shares, par value $1.00 per share, of the Company.

1.51 *"Subsidiary"* means an Entity over 50% of whose capital is owned, directly or indirectly by the Person in question or to which the Person in question may nominate or appoint more than 50% of the members of the board of directors or Persons performing similar functions, or which is otherwise effectively controlled by the Person in question.

1.52 *"Surplus"* means the excess, if any, at the time of the determination of the total assets of the Company over the aggregate of its total liabilities as shown in its books of account, plus the Company's Capital.

1.53 *"Temporary Investments"* has the meaning ascribed thereto in the Investment Guidelines.

1.54 *"U.S. Dollars" or "$"* means the lawful currency of the United States of America.

1.55 *"Valuation Guidelines"* means the guidelines for the valuation of the assets of the Company that is adopted by the Board of Directors as the "Valuation Guidelines" for the Company.

All references herein to Articles and Sections shall be deemed references to Articles and Sections of these Articles unless the context shall otherwise require. All accounting terms used herein and not otherwise defined herein shall have the respective meanings ascribed to them in accordance with GAAP

and, except as expressly provided herein, all accounting determinations shall be made in accordance with GAAP, as in effect from time to time, consistently applied.

All references herein to the masculine gender shall be deemed to include the feminine or neuter genders, the singular to include the plural, and the plural to include the singular, where the context so requires.

ARTICLE 2

FORMATION OF THE COMPANY

2.1 *Name of the Company.* The Company shall be known as "PALESTINE INVESTMENT FUND".

2.2 *Office.* The principal office of the Company shall be located at such location within Palestine as may hereafter be determined by the Board of Directors.

2.3 *Commencement; Existence; Immunities.* As soon as these Articles have been approved by the President, and the Higher Council for Development, the Board of Directors shall convene an Extraordinary General Meeting. The Company shall begin operations on the date when such meeting is held, which date shall be referred to as the "Commencement." The Company shall be a separate legal entity, the existence of which shall continue indefinitely, shall be a governmental sub-division of Palestine and shall be accorded all immunities of a political sub-division of Palestine; all of the Company's revenues, assets and properties are entitled to all of the same immunities, protections and privileges as are any other revenues, assets or properties of Palestine. More particularly, but without limitation of the generality of the foregoing, the revenues, assets and properties of the Company in any and all jurisdictions, including, without limitation, Palestine, are immune from suit, from the jurisdiction of any court, from attachment prior to judgment, from attachment in aid of execution of judgment, from execution of a judgment or from any other legal, judicial, executive or legislative process or remedy of any kind whatsoever. Likewise, such revenues, assets and properties shall be immune from set-off, banker's lien or other similar remedies.

2.4 *Initial Capital Contribution. The initial capital contribution of the Company shall consist of all of the assets of the Palestinian National Authority that are set forth in Exhibit D. The Shareholder shall cause such assets to be contributed to the Company upon its formation.*

2.5 *Term of Company.* The Company shall commence upon the Commencement and shall continue until the last Business Day of the Fiscal Year in which all assets of the Company have been sold or otherwise disposed of.