ARTICLE 3

PURPOSES AND POWERS

3.1 *Purposes*. The purposes of the Company are to acquire or otherwise invest in and to sell or otherwise dispose of Portfolio Investments that promote economic growth and infrastructure development in Palestine and stimulate private sector investment, both domestic and foreign, to achieve sustainable long-term economic prosperity for Palestine, and any other type or kind of Security that the Investment Committee determines is consistent with the Company's investment objective, policies and limitations, as set forth in these Articles and in the Investment Guidelines.

3.2 *Powers*. In furtherance of its purposes, but otherwise subject to the other provisions of these Articles, the Company shall have the power and is authorized to:

(a) sue or be sued, or institute, participate in or defend any action or proceeding, whether judicial, arbitrative, administrative or otherwise, in its name, including, without limitation, actions or proceedings in respect of the compliance or observance by the Company's Directors, officers, employees and agents with their duties, obligations and responsibilities to the Company and the Shareholder as set forth in these Articles;

(b) purchase, take, receive, lease or otherwise acquire, own, hold, improve, use or otherwise deal in or with real or personal property or an interest in real or personal property, wherever situated;

(c) sell, convey, assign, encumber, mortgage, pledge, lease, exchange, transfer, create a security interest in or otherwise dispose of all or part of its property or assets, or any interest therein, wherever situated;

(d) purchase, take, receive, subscribe for or otherwise acquire, own, hold, vote, employ, sell, mortgage, lend, lease, exchange, transfer, pledge or otherwise dispose of and otherwise use and deal in and with shares or other interests in, Securities issued by and direct or indirect obligations of (i) other Persons; or (ii) any government, state, territory, governmental district or municipality or of any instrumentality or subdivision of any of them, and, in furtherance but without limitation of the foregoing, (A) invest in Securities and such other assets as the Investment Committee shall determine are appropriate for investment by the Company and within its purposes; (B) hold such other investment assets (or interests in investment assets) of any kind or nature, real or personal, tangible or intangible, as may be received by the Company as distributions on, or with respect to, Securities held by the Company; and (C) purchase, hold, sell, transfer, lease and otherwise acquire, dispose of and exercise all rights, powers, privileges and other incidents of ownership or possession with respect to the Securities and other assets of the Company, including, without limitation, the rights to receive and exchange the Securities and any other assets of the Company, and, if the Board of Directors deems it necessary or appropriate to preserve the value of Company property, to participate in the management, control and operation of the business and affairs of Entities that have issued Securities held by the Company;

(e) make and perform contracts, including, but not limited to, contracts of guaranty and suretyship, incur liabilities, borrow money at such rates of interest as the Company may determine, issue its notes, bonds or other obligations, secure any of its obligations by mortgage, pledge or other encumbrance of all or any part of its property, franchises and income, and make contracts of guaranty and suretyship that are necessary or convenient to the conduct, promotion or attainment of the business of the Company;

(f) lend money for any lawful purpose, invest or reinvest its funds, or take and hold real or personal property as security for the payment of funds so loaned or invested;

(g) conduct its business, carry on its operations, maintain offices and exercise the powers granted by this chapter in any state, foreign country or other jurisdiction, and, in furtherance but without limitation of the foregoing, (i) maintain one or more offices within Palestine and, in connection therewith, rent or acquire office space, engage personnel and do such other acts as may be advisable or necessary in connection with such offices and personnel; (ii) acquire by purchase, exchange, lease or otherwise any personal property that may be necessary, convenient or incidental to the accomplishment of the purposes of the Company; (iii) open, maintain and close accounts with brokers and pay the customary fees and charges applicable to transactions in all such accounts; (iv) open, maintain and close bank accounts and draw checks and other orders for the payment of money; and (v) engage attorneys, accountants, consultants or such other Persons as may be necessary or advisable to counsel and advise as to the conduct of the business and affairs of the Company and pay reasonable compensation for such services;

(h) elect or appoint managers, officers, employees and other agents of the Company, define their duties, fix their compensation and fix the compensation of Directors;

(i) assist, lend money to and transact other business with the Shareholder or a manager, agent or employee of the Company;

(j) indemnify the Shareholder, any Director, any officer or other Company personnel or agents or any other Person;

(k) pay pensions and establish pension plans, pension trusts, profit-sharing plans, profit-sharing trusts, equity bonus plans, equity option plans and other incentive plans for any of the Shareholder or its employees, agents or consultants or any of the Directors, officers, managers, employees, agents or consultants of its Affiliates;

(l) make donations for the public welfare or for charitable, scientific, religious, civic, educational or similar purposes and, in time of national emergency, in aid thereof;

(m) transact any lawful business in aid of governmental policy;

(n) be a promoter, shareholder, general partner, limited partner, member, associate or manager of any association, corporation, partnership, limited partnership, limited liability company, joint venture, trust or other entity or enterprise;

(o) purchase, receive, take or otherwise acquire, own, hold, sell, lend, exchange, transfer or otherwise dispose of, pledge, use and otherwise deal in and with its Shares;

(p) only if the Act is amended so to provide, cease its activities, distribute all or substantially all of the assets of the Company, cancel these Articles, dissolve or liquidate; and

(q) have and exercise all powers, in addition to those set forth in subdivisions (a) through (p) of this Section and elsewhere in these Articles, not inconsistent with law or these Articles, necessary or convenient to effect any or all of the purposes for which the Company is formed.

3.3 *Investment Limitations.* The Company's investments will be subject in all respects to the guidelines, limitations and restrictions set forth in the Investment Guidelines.

ARTICLE 4

SHAREHOLDER

4.1 *Shareholder*. The sole Shareholder is, and shall be, the Palestinian National Authority acting through its Higher Council for Development.

4.2 *No Additional Shareholder*. After Commencement, the Company shall not admit any additional Shareholder and the Shares held by the Palestinian National Authority may not be sold, assigned, transferred or pledged.

4.3 *Action by Shareholder. Whenever action is required or permitted to be taken hereunder by the Shareholder, such action may be taken by the Designated Official of the Shareholder, and any action taken by such Designated Official shall be conclusive evidence that the action has been duly authorized by the Shareholder, and the Designated Official shall be entitled to exercise the same powers on behalf of the Shareholder as the Shareholder could exercise. The Shareholder may from time to time change the Designated Official by a subsequent written notice sent to the Company.*

4.4 *Third Party Beneficiary*. The Shareholder, in its capacity as the holder of the outstanding Shares, shall be a beneficiary of the duties, obligations and responsibilities of the Company's Directors, officers, employees and agents to the Company as set forth in these Articles and shall have the legal right and authority to bring an action in the right of the Company to procure a judgment in the Company's favor in respect of such duties, obligations and responsibilities.

ARTICLE 5

MANAGEMENT, EXPENSES AND COMPENSATION,

EXCULPATION AND INDEMNIFICATION

5.1 *Management of Company.* The day-to-day management of the activities, affairs and operations of the Company shall, to the extent provided in these Articles, be conducted by the officers of the Company, subject to the oversight of the Board of Directors. The officers of the Company shall have such powers, rights, authority and responsibilities with respect to the Company as are delegated to such officers under these Articles or otherwise by the Board of Directors.

5.2 *Officers.* The officers of the Company shall consist of a General Manager, a Secretary and a Treasurer and may include one or more Assistant General Managers, Assistant Secretaries and Assistant Treasurers and such other officers as the Board of Directors may from time to time deem desirable. The initial General Manager and the other initial officers of the Company shall be as set forth on Exhibit B hereto. Thereafter, the General Manager shall be nominated by the President and his nomination shall be confirmed by the vote of at least two-thirds of the whole Board of Directors, and all other officers shall be appointed by Resolution of Directors. Any number of offices may be held by the same Person.

(a) The officers shall perform such duties as shall be prescribed at the time of their appointment subject to any modification in such duties as may be prescribed thereafter by Resolution of Directors or Resolution of the Shareholder, but in the absence of any specific allocation of duties, it shall be the responsibility of the General Manager to manage the day-to-day affairs of the Company, the Assistant General Managers to act in order of seniority in the absence of the General Manager but otherwise to perform such duties as may be delegated to them by the General Manager, the Secretary to maintain the Share register, minute books and records (other than financial records) of the Company and

to ensure compliance with all procedural requirements imposed on the Company by applicable law, and the Treasurer to be responsible for the financial affairs of the Company.

(b) The emoluments of all officers shall be fixed by Resolution of Directors *provided* that such emoluments shall have been determined to be generally consistent with the emoluments of comparable officers in other investment funds of the size and nature of the Company. No officer of the Company shall be entitled to or shall receive any emoluments or other payments or distributions from the Company other than such as are so approved.

(c) The officers of the Company shall hold office until their successors are duly elected or appointed and qualified, but any officer elected or appointed by the Board of Directors may be removed at any time, with or without cause, by Resolution of Directors. Any vacancy occurring in any office of the Company may be filled by Resolution of Directors except that of the General Manager, whose position shall be filled as prescribed in the first paragraph of Section 5.2.

(d) The General Manager shall be a national of Palestine. The term of the initial General Manager shall begin upon formation, and shall continue through the end of the first full calendar year following Commencement, (i.e. December 31, 2003). Thereafter, the term of the General Manager shall be three years and may be renewable upon a vote of at least two-thirds of the Board of Directors. The General Manager may be removed from office at any time, with cause, by the President or by the vote of at least two-thirds of the whole Board of Directors. The General Manager shall be the chief executive of the Company and shall, under the general supervision of the Board of Directors, conduct the day-to-day management of the activities, affairs and operations of the Company. The General Manager shall be responsible for the organization, appointment and dismissal of the staff of the Company (exclusive of the officers of the Company) in accordance with the Operating Procedures. The General Manager shall be a member of the Board of Directors but cannot serve concurrently as the Chairman of the Board.

(e) Whenever activities must be carried out that require specialized knowledge or cannot be handled by the regular staff of the Company, the services of experts and consultants may be engaged on a temporary basis.

(f) The officers and staff of the Company owe their duty entirely to the Company in the discharge of their offices. An officer of the Company shall perform his duties as an officer in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances. In performing his duties, an officer shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by:

(i) one or more other officers or employees of the Company whom the officer believes to be reliable and competent as to the matters presented; or

(ii) counsel, public accountants or other persons as to matters that the Director believes to be within such Person's professional or expert competence, so long as in so relying he shall be acting in good faith and with such degree of care, but he shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance to be unwarranted. An individual who so performs his duties shall have no liability by reason of being or having been an officer of the Company.

(g) The Company and the Board of Directors shall have due regard for the need to assure the highest standards of efficiency, competence and professional and ethical integrity as the paramount consideration in appointing the officers and other staff of the Company and in establishing their conditions of service.

5.3 *Transactions with Affiliated Persons; Conflicts of Interest.* Other than the transactions expressly provided for herein, the Company may enter into transactions with (i) any Director, (ii) any Person in

which any Director has a financial interest or that is an Affiliate of any Director or to whom any Director is related, including as a director of that other Person (a "Related Person"), or (iii) the General Manager or any Affiliate of the General Manager, only on terms at least as favorable to the Company as may reasonably be expected to be obtained in an arm's length transaction from unrelated third parties. No agreement or transaction between the Company and one or more of its Directors or any Related Person or the General Manager or any Affiliate of the General Manager, including, without limitation, any transaction of the nature referred to in Section 6.8, is void or voidable for this reason only or by reason only that the Director is present at a meeting of the Board of Directors or at a meeting of the Conflicts Committee that approves the agreement or transaction or that the vote or consent of the Director is counted for that purpose:

(i) if the material facts of the interest of such Director or the General Manager in the agreement or transaction and his interest in or relationship to the other party to the agreement or transaction are disclosed in good faith or are known by the other Directors, and the Board of Directors or the Conflicts Committee, as the case may be, approves such agreement or transaction by a vote sufficient for such purpose without counting the vote of such interested Director or, if the votes of the disinterested Directors are insufficient to constitute an act of the Board of Directors as set forth in Section 6.3, by unanimous vote of the disinterested Directors present at the meeting; or

(ii) if the material facts of the interest of such Director or the General Manager in the agreement or transaction and his interest in or relationship to the other party to the agreement or transaction are disclosed in good faith or are known by the Shareholder, and such agreement or transaction is approved by Resolution of the Shareholder.

(b) A Director who has an interest in any particular business to be considered at a General Meeting of Directors or the Shareholder may be counted for the purposes of determining whether such meeting is duly constituted.

(c) If an agreement or transaction between the Company and one or more of its Directors or any Related Person or the General Manager or any Affiliate of the General Manager is not approved in accordance with clause (a) of Section 5.3, the Company may void the agreement or transaction unless the party or parties thereto shall establish affirmatively that the agreement or transaction was fair and reasonable as to the Company at the time it was approved by the Board of Directors, a committee thereof or the Shareholder.

(d) On any issue involving a conflict of interest or potential conflict of interest arising from an action or proposed action by or on behalf of the Company, the Company will take such actions as shall be approved by the Conflicts Committee, as may be necessary or appropriate to ameliorate the conflict of interest or potential conflict of interest. These actions may include one or more of the following:

(i) appointing an independent Person (which may be, without limitation, an accounting firm, investment bank or legal counsel) to make a determination with respect to any matter as to which a conflict of interest exists or may exist;

(ii) appointing an independent Person selected by the Board of Directors to manage the assets in question;

(iii) appointing an independent Person to manage the assets in question of the General Manager, the officer or the Directors or their respective Affiliates, or other Entity with which the conflict of interest arises;

(iv) disposing of the Portfolio Investment in question by the Company on terms that are determined by the Board of Directors (in the good faith exercise of their judgment) and approved by the Conflicts Committee to be commercially reasonable under the circumstances, or providing for the disposition by the General Manager, such officer or Director or the other Person with which the conflict of interest has arisen of the property giving rise to such conflict of interest; or

(v) taking any other action as to such conflict of interest that is approved by the Conflicts Committee.

If the Company takes one or more of the actions specified in the foregoing in respect of a matter giving rise to a conflict of interest, none of the General Manager, any other officer of the Company, any Director, or any of their respective Affiliates will have any liability to the Company or the Shareholder in respect of actions taken in good faith by it in the pursuit of its own interest, *provided* that it has received the prior approval of the Conflicts Committee. Any proposed investment by the Company in any entity in which the General Manager, any other officer of the Company, any Director or their respective Affiliates have previously invested shall be deemed to constitute a conflict of interest or potential conflict of interest.

5.4 *Expenses*. The Company shall be responsible for, and shall pay for, all costs and expenses related to the Company's operations and the purchase, sale and retention of the Company's Portfolio Investments and any other Company assets, including, without limitation, the costs and expenses of brokerage, quotation services, any borrowings, interest payments, auditing, accounting (including expenses associated with the preparation of the Company's financial statements) and legal services, Securities lending, clearing and settlement.

5.5 *Exculpation.*

(a) Except as otherwise required by applicable law, neither any Director nor the General Manager nor any agent, officer, employee or Affiliate of the Company (severally, an "Exculpated Person") shall be liable, responsible or accountable in damages or otherwise to the Company or to the Shareholder for any breach of duty to the Company or the Shareholder or for any mistake, action, inaction, negligence, dishonesty, fraud or bad faith of any broker or other agent or for any act or failure to act pursuant to these Articles or otherwise, except that (a) such persons will be liable for their gross negligence, willful misconduct, fraud or self-dealing, and (b) this Section 5.5 shall not eliminate or limit the liability of the General Manager, any other officer of the Company or any Director if a judgment or other final adjudication adverse to him establishes that his acts or omissions were in bad faith or involved intentional misconduct or a knowing violation of law or that he personally gained in fact a financial profit or advantage to which he was not legally entitled.

(b) In performing its duties, each Exculpated Person shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by: (i) one or more agents or employees of the Company, or (ii) counsel, accountants or other Persons as to matters that such Exculpated Person believes to be within such other Person's professional or expert competence; *provided,* that such Exculpated Person has no knowledge concerning the matter in question that would cause such reliance to be unwarranted and is otherwise acting in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances.

5.6 *Indemnification.*

(a) The Company shall indemnify, defend and hold harmless each Director and each officer of the Company (severally, an "Indemnified Person"), to the fullest extent permitted by law, from

and against any Damages arising out of or in connection with (i) any act or failure to act or alleged act or failure to act by an Indemnified Person arising out of, in connection with or in any way related to the Company, except for any Damages resulting from such Indemnified Person's gross negligence or willful misconduct or (ii) the affairs of the Company; *provided*, that the Company shall not indemnify any Indemnified Person for any Damages as to which indemnification is barred under applicable laws; and *provided, further,* that any Indemnified Person shall first seek recovery under any other indemnity or any insurance policies by which such Indemnified Person is indemnified or covered, as the case may be, but only to the extent that the indemnitor with respect to such indemnity or the insurer with respect to such insurance policy provides (or acknowledges its obligation to provide) such indemnity or coverage on a timely basis and such Indemnified Person shall obtain the written consent of the Board of Directors prior to entering into any compromise or settlement which could result in any obligation of the Company to indemnify such Indemnified Person; and *provided, further,* that if liabilities arise out of the conduct of the business and affairs of the Company and any other Person for which the Indemnified Person would be entitled to indemnification hereunder, the amount of indemnification provided by the Company shall be limited to the Company's proportionate share thereof determined in good faith by the Board of Directors in light of its fiduciary duties to the Company and the Shareholder. Attorneys' fees and expenses payable pursuant to this Section 5.6(a) shall be paid by the Company as they are incurred upon receipt, in each case, of an undertaking by or on behalf of the Indemnified Person to repay such amounts if it is ultimately determined that such Indemnified Person is not entitled to indemnification with respect thereto.

(b) The rights of indemnification herein provided may be insured against by policies maintained by the Company, shall be severable, shall not be exclusive of or affect any other rights to which any Indemnified Person may now or hereafter be entitled, shall remain in full force and effect following any termination of these Articles, shall continue as to a Person who has ceased to be a Person

defined as an "Indemnified Person" and shall inure to the benefit of the heirs, executors, administrators and successors of such a Person. Nothing contained herein shall affect any rights to indemnification to which Company personnel, other than Indemnified Persons, and other Persons may be entitled by contract or otherwise under law.