ARTICLE 9

DISTRIBUTIONS; NO CAPITAL WITHDRAWAL

9.1 *Discretionary Distributions*. Subject to Section 9.2, but only with the express prior approval of the Shareholder, the Board of Directors may distribute to the Shareholder cash, Securities or other Company property at any time.

9.2 *Restrictions on Distributions.*

(a) If less than all of a Portfolio Investment is disposed of, the portion disposed of and the portion retained shall for purposes of these Articles be deemed to be separate investments. Any allocations or distributions made with respect to such Portfolio Investment, and any amounts received or expenses paid by the Company which are attributable to such Portfolio Investment, shall be allocated between the portion disposed of and the portion retained pro rata in accordance with their respective purchase prices.

(b) It is the intent of the Company to make distributions in cash, unless such distributions are not in the best interests of the Company. Except in connection with the liquidation and dissolution of the Company, the Company shall distribute only Marketable Securities and Temporary Investments as distributions in kind. In the event a distribution of Marketable Securities or Temporary Investments is made, such Marketable Securities or Temporary Investments shall be deemed to have been sold at their fair market value as estimated in good faith by the Board of Directors on the date of distribution and the proceeds of such sale shall be deemed to have been distributed to the Shareholder for all purposes of these Articles. In the case of the dissolution of the Company, Portfolio Investments may also be distributed, at their fair market value as estimated in good faith by the Board of Directors. The Board of Directors may cause certificates evidencing any Marketable Securities, Temporary Investments or Portfolio Investments to be distributed to be imprinted with legends as to such restrictions on transfer that it may deem

necessary or appropriate, and may require any holder to which Marketable Securities, Temporary Investments or Portfolio Investments are to be distributed to agree in writing (i) that such Marketable Securities or Temporary Investments will not be transferred except in compliance with such restrictions, and (ii) to such other matters as the Board of Directors may deem necessary or appropriate.

(c) Distributions (other than liquidating distributions) shall only be declared and paid out of Available Assets; *provided* that the Shareholder may not request such a distribution prior to the fifth anniversary of the Commencement of the Company.

(d) No distribution shall be declared and paid unless the Board of Directors determines that immediately after the payment of the distribution the Company will be able to satisfy its liabilities as they become due in the ordinary course of its business and the realizable value of the assets of the Company will not be less than the sum of its total liabilities as shown in its books of account, and its Capital. In the absence of fraud, the decision of the Board of Directors as to the realizable value of the assets of the Company is conclusive, unless a question of law is involved.

(e) No distribution shall bear interest as against the Company.

9.3 *No Withdrawal of Capital.* The Shareholder shall not have the right to withdraw (by borrowing, direct distribution or otherwise) Capital from the Company or to cause the Company to purchase its Shares.

9.4 *Certain Provisions Relating To Distributions.*

(a) Notice of any distribution permitted hereunder that may have been declared shall be given to the Shareholder.

(b) A Share issued as a distribution by the Company shall be treated for all purposes as having been issued for money equal to the Surplus that is transferred to Capital upon the issue of the Share.

(c) In the case of a distribution of authorized but unissued Shares with par value, an amount equal to the aggregate par value of the Shares shall be transferred from Surplus to Capital at the time of the distribution.

## ARTICLE 10

## DURATION AND TERMINATION OF THE COMPANY

10.1 *Liquidation of Company upon Dissolution.*

(a) Upon dissolution, the Company shall be liquidated in an orderly manner in accordance with the provisions of this Section 10.1. The Board of Directors shall appoint an independent liquidator or liquidators, who shall not be Affiliated with the Shareholder, the Company or any Person's company and each of which may be an accounting firm of recognized international standing or other firm of recognized international standing regularly engaged in the business of accounting as independent liquidator to corporate entities, who shall proceed, subject to the provisions herein, to liquidate the Company's assets and wind up the affairs of the Company pursuant to these Articles. The liquidator(s) are authorized to sell, exchange or otherwise dispose of the assets of the Company, or to distribute Company assets in kind, as the liquidator(s) shall determine to be in the best interests of the Shareholder. The liquidator(s) are also authorized to hold any funds required to be held in escrow pursuant to the provisions of any agreement for the sale of investments that require such an escrow. Such escrowed funds shall be deposited in an interest-bearing account. The reasonable out-of-pocket expenses incurred by the liquidator(s) in connection with liquidating and winding up the Company, all other liabilities or losses of the Company or the liquidator(s) incurred in accordance with the terms of these Articles and reasonable compensation for the services of the liquidator(s) shall be borne by the Company. Except as otherwise required by law, the liquidator(s) shall not be liable to the Shareholder or the Company for any loss attributable to any act or omission of the liquidator(s) taken in good faith in connection with the winding up of the Company and the distribution of Company assets. The liquidator(s) may consult with counsel and the accountants with respect to liquidating and winding up the Company and distributing its assets

and shall be justified in acting or omitting to act in accordance with the advice or opinion of such counsel or accountants, *provided* that the liquidator(s) shall have used reasonable care in selecting such counsel or accountants.

(b) The liquidator(s) shall apply the proceeds of such liquidation, or in its sole discretion, distribute Company assets in the following order of priority:

First, to creditors in satisfaction of debts and liabilities of the Company whether by payment or the making of reasonable provision for payment and the expenses of liquidation;

Second, to the establishment of reasonable reserves (which may be funded by a liquidating trust) determined by the Board of Directors or the liquidating trustee, as the case may be, to be reasonably necessary for the payment of the Company's expenses (including expenses of the liquidator(s)), liabilities and other obligations (whether fixed or contingent); and

Third, to the Shareholder.

(c) In establishing reserves under clause Second, the liquidator(s) shall set aside, for a period of not more than two years from the date of dissolution, such amounts (if any) as the Board of Directors determines may be reasonably required to meet the Company's potential indemnity obligations whether or not such potential obligations would constitute contingent liabilities of the Company under applicable accounting standards.

(d) The Shareholder shall be furnished a written report accounting for the manner of all such distributions, and all such distributions in cash or in kind shall be made, to the extent possible, pro rata with each class of Securities of any issuer being considered a different asset.

ARTICLE 11

RECORDS AND REPORTS

11.1 *Books and Records*. The Company shall maintain books of account on the accrual method of accounting and in accordance with GAAP. The Company shall also maintain the following records: (i) lists of all proposed investments and (ii) lists of all Portfolio Investments. The Shareholder may, upon not less than ten (10) days' notice to the Company, inspect and copy at its own expense, for any purpose reasonably related to the Shareholder's Shares, the records referred to in this Section 11.1, any financial statements maintained by the Company and other information regarding the affairs of the Company.

11.2 *Financial Reports*. Quarterly unaudited financial statements reporting on the financial condition of the Company's business and the results of its operations shall be furnished to the Shareholder. An annual audit of the Company shall be made by the Accountants and a copy of the report of such audit, consisting of a balance sheet, a statement of operations and a statement of cash flows and related notes, shall be furnished to the Shareholder within a reasonable period after the close of each Fiscal Year. These reports shall also contain a list of the Company's Securities and any other Company assets. All financial reports shall be prepared and presented in accordance with GAAP.

11.3 *Accountants*. PricewaterhouseCoopers shall be the initial independent certified public accountants for the Company (the "Accountants"). The Board of Directors shall thereafter annually engage the Accountants on behalf of the Company as provided in Section 6.2(g). The Accountants shall be a firm of internationally recognized independent certified public accountants. The Accountants shall perform an audit of the Company's financial statements for each Fiscal Year in accordance with Section 11.2. The Board of Directors shall have the authority in its discretion at any time to remove the Accountants and to select replacement Accountants.

## ARTICLE 12

## SHAREHOLDER ACTION

12.1 *Meetings.* The Company shall not be required to hold meetings of the Shareholder annually. Meetings of the Shareholder, for any purpose or purposes, unless otherwise prescribed by statute, may be called by the Board of Directors at any time in its sole discretion and will be called by the Board of Directors upon written request from any two Directors or from the Shareholder, which request shall specify the reason for, and proposed date of, the meeting. Upon receipt of such request, the General Manager shall cause notice to be given to the Shareholder of such meeting in accordance with the provisions of Section 12.3.

12.2 *Place of Meetings.* The General Manager may designate any place within Palestine as the place for any meeting of the Shareholder. If no designation is made, or if a special meeting is otherwise called, the place of meeting shall be the principal office of the Company in Palestine.

12.3 *Notice of Meetings.* Except as provided in Section 12.4 below, written notice stating the place, day and hour of the meeting and the purpose or purposes for which the meeting is called and indicating that such notice is being issued by or at the direction of the Person or Persons calling the meeting shall be delivered no fewer than twenty-one (21) calendar days before the date of the meeting, either personally, by facsimile or by mail, by or at the direction of the Company, to such Persons as are entitled to receive such notices. If mailed, the notice shall be deemed to be delivered upon receipt by an acknowledged delivery mail service, addressed to the Shareholder at the Shareholder's address as it appears in the records of the Company with postage thereon prepaid.

12.4 *Action by Shareholder without a Meeting.* Action required or permitted to be taken at a meeting of Shareholder may be taken without a meeting, without prior notice and without a vote of the Shareholder if the action is evidenced by written consent describing the action taken, signed on behalf of

the Shareholder by the Designated Official, and delivered to the General Manager by hand or by certified or registered mail, return receipt requested, for filing with the Company records. Every written consent under this Section 12.4 shall bear the date of signature of the Shareholder. Action taken under this Section 12.4 shall be effective ten (10) days after the consent is signed and such written consent has been received by the Company or its designated agent, unless the consent specifies a different effective date.

ARTICLE 13

SEAL

13.1 *Seal.* The Company shall have a Company Seal, and an imprint shall be kept at the registered office of the Company. The Board of Directors shall provide for the safe custody of the Seal. The Seal when affixed to any written instrument shall be witnessed by a Director or any other Person so authorized from time to time by Resolution of Directors. The Board of Directors may provide for a facsimile of the Seal and of the signature of any Director or authorized person which may be produced by printing or other means on any instrument and it shall have the same force and validity as if the Seal had been affixed to such instrument and the same had been signed as hereinbefore described.

## ARTICLE 14

## AMENDMENTS

14.1 *Amendments.* These Articles may be amended, in whole or in part, by Resolution of Directors, except that no provision of (a) these Articles with respect to (i) the size and the composition of the Board of Directors or any of the committees of the Board of Directors, including particularly the requirements for Independent Directors as members thereof, and any requirement that the Board of Directors or any committee thereof act in respect of any matter, (ii) the minimum standards for independence in the definition of Independent Director, (iii) the Investment Guidelines or (iv) the distribution of funds or assets by the Company (including, without limitation, by liquidation of the Company or part thereof) or (b) this Article 14 may be changed except by an amendment of the Act, and except that no provision requiring the approval or consent of the Shareholder may be changed except by a Resolution of the Shareholder.