# EXHIBIT 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

THE ESTATE OF YARON UNGAR by and through its Administrator, DAVID STRACHMAN; DVIR UNGAR, minor, by his guardians and next friends, YISHAI UNGAR, minor, by his guardians and next friends, PROFESSOR MEIR UNGAR, JUDITH UNGAR, individually and in their capacity as legal guardians of Plaintiffs DVIR UNGAR and YISHAI UNGAR; RABBI URI DASBERG, and JUDITH DASBERG, in their capacity as legal guardians of Plaintiffs DVIR UNGAR and YISHAI UNGAR; AMICHAI UNGAR; DAFNA UNGAR; and MICHAL COHEN,

Case No. 05-CV-7765 (CM) (LMS)

Plaintiffs,

**FIRST AMENDED <u>COMPLAINT</u>**

-against-

ORASCOM TELECOM HOLDING S.A.E (a/k/a "Orascom Telecom" a/k/a "OTH") and THE PALESTINE INVESTMENT FUND (a/k/a "Palestinian Investment Fund" a/k/a "Sharekat Sundouk al-Istithmar al-Filistinee")

Defendants.

------------------------------------------------------------------------ X

PLAINTIFFS, complaining of the Defendants, by their attorneys, JAROSLAWICZ & JAROS, allege for their complaint as follows:

## NATURE OF PROCEEDING AND RELIEF REQUESTED

1. Plaintiffs hold a final judgment in excess of $116,000,000 against the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") that was entered by the United States District Court for the District of Rhode Island on July 13, 2004, and thereafter registered in this Court pursuant to 28 U.S.C. § 1963 as Docket No. 18 MS 0302.

2. Upon information and belief, Defendant ORASCOM TELECOM HOLDING S.A.E. owes debts to judgment debtor PA and/or holds money and/or other property which belongs to the PA and/or in which the PA has an interest, some of which debts, money and/or property are nominally owed and payable to and/or titled under the name of THE PALESTINE INVESTMENT FUND.

3. Plaintiffs therefore bring this action for a judgment of turnover against Defendant ORASCOM TELECOM HOLDING S.A.E., in which THE PALESTINE INVESTMENT FUND has also been named as a Defendant.

4. Plaintiffs clarify that they were not required to name THE PALESTINE INVESTMENT FUND as a party to, or provide it notice of, this proceeding, because (as explained below) THE PALESTINE INVESTMENT FUND has no legal existence separate from judgment-debtor PA. Moreover, alternatively, even if THE PALESTINE INVESTMENT FUND is found to be an entity legally separate from the PA, its status would (at most) be that of a putatively interested party that could seek to intervene to assert claims. Plaintiffs recognize, however, that for its own protection Defendant ORASCOM TELECOM HOLDING S.A.E. would likely seek to implead THE PALESTINE INVESTMENT FUND, which procedure would unnecessarily delay this action. Thus, solely in order to streamline and

expedite this action, Plaintiffs have named "THE PALESTINE INVESTMENT FUND" as a defendant.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 18 U.S.C. §§ 2333 and 2338, 28 U.S.C. §§ 1331 and 1963, the Court's ancillary enforcement jurisdiction and the Court's equity powers.

6. This Court has jurisdiction over Defendants pursuant to Fed.R.Civ.P. 4(k)(1) and/or 4(k)(2).

7. The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) and (d).

## THE PARTIES

8. Plaintiff THE ESTATE OF YARON UNGAR, which is represented in this action by a court-appointed administrator, attorney David Strachman, holds a judgment against the PA and the PLO, jointly and severally, in the amount of $2,932,158.00.

9. Plaintiffs DVIR UNGAR and YISHAI UNGAR, minors who bring this action through their grandparents and legal guardians plaintiffs Meir Ungar, Judith Ungar, Uri Dasberg and Judith Dasberg, each hold a judgment against the PA and the PLO, jointly and severally, in the amount of $30,488,482.50.

10. Plaintiffs PROFESSOR MEIR UNGAR and JUDITH UNGAR, who bring this action individually and in their capacity as legal guardians of plaintiffs Dvir and Yishai

Ungar, each hold a judgment against the PA and the PLO, jointly and severally, in the amount of $15,000,000.00.

11. Plaintiffs RABBI URI DASBERG and JUDITH DASBERG bring this action in their capacity as legal guardians of plaintiffs Dvir and Yishai Ungar.

12. Plaintiffs AMICHAI UNGAR, DAFNA UNGAR and MICHAL COHEN each hold a judgment against the PA and the PLO, jointly and severally, in the amount of $7,500,000.00.

13. Upon information and belief, Defendant ORASCOM TELECOM HOLDING S.A.E (a/k/a "Orascom Telecom" a/k/a "OTH") (hereinafter "ORASCOM") is a corporation organized and existing pursuant to the laws of the State of Egypt.

14. Upon information and belief, ORASCOM, itself and/or through its agents, continuously and permanently conducts extensive, substantial business in the State of New York and throughout the United States.

15. Upon information and belief, ORASCOM, itself and/or through its agents, maintains assets within the State of New York and elsewhere in the United States.

16. Upon information and belief, commercial and investment assets owned by judgment debtor PA are nominally titled under the name THE PALESTINE INVESTMENT FUND ("PIF") and PIF is an alias and/or shell fund of the PA.

17. Upon information and belief, the PA, itself and/or through its agents, transacts extensive business under the name "THE PALESTINE INVESTMENT FUND" in the State of New York and throughout the United States.

18. Upon information and belief, alternatively if the PIF is found to have cognizable legal personality separate from the PA, the PIF, itself and/or through its agents, transacts extensive business in the State of New York and throughout the United States.

19. Upon information and belief, the PA, itself and/or through its agents, maintains assets within the State of New York and elsewhere in the United States that are nominally titled under the name THE PALESTINE INVESTMENT FUND.

## STATEMENT OF FACTS

### A. Background

20. Plaintiffs are the orphaned children, parents, siblings and administrator of the Estate of United States citizen Yaron Ungar, who was murdered, along with his pregnant wife Efrat, in a terrorist machine-gun attack on June 9, 1996 in Israel.

21. A 25 year-old New York native, Yaron was a schoolteacher studying for rabbinical ordination when he was murdered.

22. The Ungars were ambushed while returning from a wedding.

23. Efrat shielded their ten month-old son Yishai from the bullets and he survived the attack.

24. The Ungars' other son Dvir, then two years old, was not in the vehicle.

25. In March 2000, the Ungar family filed suit against the Palestinian Authority, the Palestine Liberation Organization, and other defendants, in the United States District Court for the District of Rhode Island under the Antiterrorism Act ("ATA") 18 U.S.C. § 2331 *et seq. Ungar et al. v. The Palestinian Authority et al.*, Civil Action 00-105L (D.R.I.).

26. Section 2333(a) of the ATA creates a federal cause of action for a U.S. national, or his estate, survivors and heirs, injured by reason of an act of "international terrorism" as defined in § 2331.

27. Section 2338 of the ATA provides that the "district courts of the United States shall have exclusive jurisdiction over an action brought under" § 2333.

28. On July 13, 2004, the United States District Court in Rhode Island entered final judgment for the Plaintiffs and against the PA and PLO, jointly and severally, in the amount of $116,409,123.00 in damages, and for attorney's fees in the amount of $11,925.00 against the PA and $6,345.00 against PLO, and on March 31, 2005, the Court of Appeals for the First Circuit affirmed the judgment of the Rhode Island District Court. *Ungar v. Palestinian Authority*, 325 F.Supp.2d 15 (D.R.I. 2004) *aff'd* 402 F.3d 274 (1st Cir. 2005) *cert. denied sub nom. Palestine Liberation Organization et al. v. Ungar ex rel. Strachman et al.*, 126 S.Ct. 715 (2005).

29. On May 5, 2005, the United States District Court for the District of Rhode Island entered an order finding that

> (i) Plaintiffs have presented evidence that Defendants do not intend to honor the judgment of the Court in this action, that Defendants have recently liquidated assets comprising a significant part of their overall investment portfolio, and that persons holding Defendants' assets in the United States are in the process of returning those assets to Defendants.
>
> (ii) Defendants are foreign entities and the dissipation of their U.S.-based assets is liable to render satisfaction of the judgment entered by this Court impossible. That judgment is intended to compensate Plaintiffs for the murder of their decedent, and Plaintiffs' inability to satisfy the judgment and receive the compensation due to them would therefore cause Plaintiffs severe and irreparable injury.

Injunction, May 5, 2005, *Ungar v. Palestinian Authority*, Civil Action 00-105L (D.R.I.).

30. The PA and PLO have refused to satisfy Plaintiffs' judgment, and have expressly informed the Ungars' trial counsel that they "will never pay" the judgment.

31. Plaintiffs have served several deposition notices seeking to depose officials of the PA and PLO with knowledge of the investments and assets of the PA and PLO, but the PA and PLO have refused to produce their officials for deposition.

32. The PA and the PLO are refusing to pay the Ungars' judgment because they do not recognize the authority of this Court or of any other court of the United States.

33. On July 15, 2005, Judge Marrero of this Court ordered the PA and PLO to pay discovery sanctions in the amount of some $19,000 previously imposed by the court in *Knox v. Palestine Liberation Organization*, Civ. No. 4466 (VM), and to answer the complaint in that action, by no later than August 15, 2005. In response to that order, the PLO and PA sent a letter to Judge Marrero on August 15, 2005, stating that:

> [T]he defendants have instructed counsel to present only their position that U.S. courts have no jurisdiction over them and not to answer on the merits . . .
>
> This same position, that the Court has no jurisdiction over them, applies to the order for defendants to pay sanctions.

Letter from Ramsey Clark to Marrero, J., August 15, 2005, *Knox v. Palestine Liberation Organization*, Civ. No. 4466 (VM).

34. Plaintiffs have registered their judgment against the PA and PLO in this Court pursuant to 28 U.S.C. § 1963 as Docket No. 18 MS 0302.

35. Pursuant to 28 U.S.C. § 1963, Plaintiffs' judgment now has "the same effect as a judgment of" this Court "and may be enforced in like manner", and the ancillary

subject-matter jurisdiction of this Court to enforce Plaintiffs' judgment is therefore identical to that of the United States District Court in Rhode Island that entered the judgment.

36. Upon information and belief, Defendant ORASCOM is a telecommunications company incorporated and headquartered in Egypt.

37. Upon information and belief, Defendant ORASCOM conducts extensive business and commercial activities throughout the United States and the State of New York, and holds assets in the State of New York and elsewhere in United States.

## B. Defendant ORASCOM is Indebted to and Holds Assets of Judgment-Debtor PA

38. Upon information and belief, as of January 1, 2003, the PA made, held and owned the following direct investments in Defendant ORASCOM (collectively hereinafter: "Direct Investments"):

a. On December 10, 2002, the PA purchased 10 million shares of Defendant ORASCOM; and

b. As of January 1, 2003, the PA owned 2 million Global Depository Receipts ("GDR") shares of Defendant ORASCOM traded on the London stock exchange; and

c. On an unknown date or dates prior to January 1, 2003, the PA transferred approximately $107,500,000.00 to Defendant ORASCOM as an investment, in expectation of an increase in shareholder capital which did not take place.

39. Upon information and belief, the Direct Investments have not been repaid to the PA, and Defendant ORASCOM remains indebted to the PA for the amount of the Direct Investments.

40. Upon information and belief, Orascom Telecom Algeria (a/k/a "Djezzy") (hereinafter: "OTA") and Orascom Telecom Tunisia (a/k/a "Tunisiana") (hereinafter: "OTT") are telecommunication companies.

41. Upon information and belief Defendant ORASCOM owns a majority ownership interest in OTT and OTA.

42. Upon information and belief, on an unknown date or dates, the PA acquired direct and/or indirect stakes and/or shares and/or other interests in OTA and OTT (collectively hereinafter: "PA's OTA and OTT Stakes").

43. Upon information and belief, on an unknown date or dates, Defendant ORASCOM agreed to purchase the PA's OTA and OTT Stakes for an unknown sum totaling hundreds of millions of dollars.

44. Upon information and belief, on an unknown date or dates in late 2004 and/or early 2005, Defendant ORASCOM purchased and acquired the PA's OTA and OTT Stakes for an unknown sum totaling hundreds of millions of dollars (hereinafter: "Defendant ORASCOM's Acquisition of the PA's OTA and OTT Stakes").

45. Upon information and belief, as a consequence and result of, and as consideration for, Defendant ORASCOM's Acquisition of the PA's OTA and OTT Stakes, Defendant ORASCOM is indebted to and owes the PA at least tens and probably hundreds of millions of dollars.

46. Upon information and belief, the PA carried out all of the above-described transactions and investments in its own name and/or under various aliases, and/or under the names of various shell funds, including without limitation "The Palestinian Commercial Services Corporation" (a/k/a "Palestine Commercial Services Company") ("PCSC") and "The Palestine Investment Fund" ("PIF") (collectively hereinafter: "Aliases and Shell Funds")

47. Upon information and belief, all or nearly all of the Aliases and Shell Funds including the PCSC and PIF were created and are controlled and/or directed by Mohammed Rashid (a/k/a Mohammed Rachid a/k/a Khaled Salaam) (hereinafter: "Rashid").

48. Upon information and belief, Rashid has managed the covert assets and investments of the PA and PLO for decades.

49. Plaintiffs have served the PA and PLO with a notice of deposition requiring the PA and PLO to produce Rashid to provide deposition testimony regarding, *inter alia*, the investments and assets of the PA and PLO held by and/or titled to the PIF, the PCSC and the other Aliases and Shell Funds, but the PA and PLO have refuse to produce Rashid and have informed Plaintiffs that they will not do so.

50. Upon information and belief, the PA created and uses the Aliases and Shell Funds to shield the financial activities and assets of the PA from law-enforcement and tax authorities and from creditors such as the instant Plaintiffs.

51. Upon information and belief, the Aliases and Shell Funds are aliases and pseudonyms for the PA and have no legal personality or corporate identity separate from the PA.

52. Upon information and belief, alternatively, any separate legal personality and/or or corporate identity formally or nominally enjoyed and/or claimed by any of the Aliases and Shell Funds is artificial and/or fraudulent and so not legally cognizable.

53. Upon information and belief, alternatively, any separate legal personality and/or or corporate identity formally or nominally enjoyed and/or claimed by any of the Aliases and Shell Funds is intended solely to shield the financial activities and assets of the PA from law-enforcement and tax authorities and from creditors and so not legally cognizable.

54. Upon information and belief, alternatively, any of the Aliases and Shell Funds that have cognizable legal personality or corporate identity separate from the PA, are shell entities wholly-owned and controlled by the PA with no purpose or business other than to act as investment vehicles for the PA.

55. Upon information and belief, alternatively, any of the Aliases and Shell Funds that have cognizable legal personality or corporate identity separate from the PA, are agents and/or trustees and/or fiduciaries of the PA.

56. Upon information and belief, alternatively, any of the Aliases and Shell Funds that have cognizable legal personality or corporate identity separate from the PA, constitute and serve as constructive and/or resulting trusts for the PA.

57. Upon information and belief, the PIF was capitalized by the PA without consideration.

58. Upon information and belief, all assets and property nominally titled to and/or owned by the PIF were conveyed to the PIF by the PA without fair consideration,